# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JANE DOE, a minor

    Plaintiff,

    v.                                                 Case No. 09-C-1089

DON GALSTER,
SCHOOL DISTRICT OF ELMBROOK,
and MATTHEW W. GIBSON,

    Defendants.

## DECISION AND ORDER

## NATURE OF THE CASE

The plaintiffs, Jane Doe and her parents, originally filed this civil rights action against several defendants on November 18, 2009. The plaintiff, a minor, is represented by a guardian ad litem, as well as by counsel. On June 21, 2010, the court granted the plaintiffs' motion to file an amended complaint. The first amended complaint, which only names Jane Doe as a plaintiff, is brought pursuant to 42 U.S.C. § 1983. The complaint asserts that the defendants, the School District of Elmbrook, Don Galster, and Matthew W. Gibson, violated the rights secured to the plaintiff by the Fourteenth Amendment to the United States Constitution, Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et. seq., and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73 (E.D. Wis.).

This action arises from events which occurred during the 2007-2008 school year when the plaintiff was in the seventh grade at Pilgrim Park Middle School in the Elmbrook School District. The amended complaint asserts that the plaintiff was the victim of repeated physical and verbal harassment at the hands of other students and that the defendants failed to investigate, review, or protect the plaintiff from this harassment. The plaintiff requests compensatory and punitive damages, as well as costs, attorneys' fees, litigation expenses, and any further relief the court deems justified.

On October 13, 2010, the plaintiff filed a motion to compel the production of student records. (Docket #57). On October 14, 2010, the defendants filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).[1] (Docket #59). These motions will be addressed herein.

## **JUDGMENT ON THE PLEADINGS**

A party may move for a judgment on the pleadings "after the pleadings are closed – but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is subject to the same standard as a Rule 12(b)(6) motion to dismiss. Forseth v. Village of Sussex, 199 F.3d 363, 368 n.8 (7th Cir. 2000); Evans v. Lederle Laboratories, 167 F.3d 1106, 1108 (7th Cir. 1999). In order to survive dismissal, a complaint must state a claim to relief that is "plausible on its face" and rises above the "merely speculative." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007).

When deciding a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff. Id. In doing so, the court must accept all facts alleged in the complaint

---

[1] The defendants titled the motion a "Motion to Dismiss," but indicate in the motion that it is filed pursuant to Fed. R. Civ. P. 12(c). (Motion to Dismiss at 1). In the supporting memorandum, the defendants acknowledge that their motion is actually a motion for judgment on the pleadings. (Memorandum of Defendants in Support of Motion to Dismiss at 2, n.1). Therefore, this court will refer to the motion as a motion for judgment on the pleadings.

- 2 -

to be true and it must resolve every reasonable doubt in favor of the plaintiff. Id. at 572; Harris v. Brock, 835 F.2d 1190, 1193 (7th Cir. 1987). The court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555. Therefore, dismissal is only appropriate where, accepting all well-pleaded facts in the complaint as true and drawing all inferences in favor of the plaintiff, the complaint does not plausibly give rise to an entitlement to relief. Id. at 556.

## **FACTUAL ALLEGATIONS OF THE FIRST AMENDED COMPLAINT**

At all times relevant to the complaint, the plaintiff was a seventh grader at Pilgrim Park Middle School (Pilgrim Park). Pilgrim Park is owned and operated by the Elmbrook School District (School District), which receives federal funds. The plaintiff was born in Russia and was adopted and brought to this country by her adoptive parents. During the 2007-2008 school year, defendant Matthew W. Gibson was superintendent of the School District and defendant Don Galster was the principal of Pilgrim Park.

The complaint alleges that starting in the beginning of the 2007-2008 school year, four students, T.M., M.C., B.K., and J.Q., began to bully, harass, and abuse the plaintiff on the bus, in school and at school events. The complaint states that these actions were motivated in part by the plaintiff's sex, in part by her race, and in part by her Russian national origin. These four students did not reside in the School District and were allowed to enroll based on school choice.

Beginning in November, 2007, and continuing through June, 2008, these students engaged in a pattern of verbal and physical harassment toward the plaintiff. The complaint details several harassing acts suffered by the plaintiff at the hands of these students, including but not limited to obscene gestures and name calling, repeated punching and shoving, spitting, stealing, and breaking or ruining her personal property.

There were also instances of more severe acts of violence toward the plaintiff. According to the complaint, on May 14, 2008, the plaintiff was at a track meet at Mukwonago High School. The track meet was a school function and was supervised by, among others, teachers and administrators from Pilgrim Park. Three times during this track meet, T.M. and M.C. used track shoes with spikes as weapons to hit the plaintiff. The plaintiff sustained approximately 38 puncture wounds from these three incidences. T.M. and M.C. were later charged in Waukesha County Circuit Court for battery to the plaintiff.

On or about June 5, 2008, T.M. slammed the plaintiff into a locker and then pushed her down a staircase. On June 6, 2008, T.M. pushed the plaintiff over and punched her in the face at her locker, knocking her unconscious.

On June 13, 2008, T.M., M.C., and J.Q. threw basketballs and footballs at the plaintiff, striking her in the head several times. They also used three-foot long, one-inch diameter tree limbs to beat the plaintiff on her legs, arms, shoulders, back and head, causing bleeding, lacerations, welts, bruising, pain, emotional trauma, and permanent scarring. T.M. also kicked her in the ribs, stomach, spine, and back, causing bruises. He then forcefully threw the plaintiff into a mud puddle, stuffed mud into her nose and mouth, and smeared mud on her face. As a result of this attack, the plaintiff's ninth, tenth, and eleventh vertebrae were severely bruised.

The plaintiff's parents informed the defendants of the harassment in approximately February 2008 and again in June 2008. More specifically, the plaintiff's mother emailed a Pilgrim Park counselor requesting assistance dealing with the pattern of abuse. The plaintiff's father spoke with the defendants several times regarding the May 14 track spike incidences, the June 6 incident in which the plaintiff was knocked unconscious, and the June 13 attack with tree limbs. The plaintiff's parents requested that the plaintiff be allowed to attend another school

within the School District and that the School District offer alternative school choices to the harassers.

In March 2008, the associate principal ordered that the plaintiff and T.M., one of the primary harassers, have no contact with each other and assigned them to different "HW Club rooms." Pilgrim Park personnel also arranged for the plaintiff and T.M. to have lockers at opposite ends of the hall. However, the School District did not allow the plaintiff to attend another school within the School District or remove her harassers from the school. On August 13, 2008, the plaintiff's father learned that there was no plan to protect the plaintiff from further abuse during the upcoming 2008-2009 school year and that there would not be a plan. In addition, he learned that the plaintiff would have many of the same classes as one of her primary harassers from the previous year.

The plaintiff's parents enrolled her in New Berlin Eisenhower School effective September 1, 2008. The plaintiff's family relocated to the New Berlin school district, which cost the family approximately $400,000.

## **ANALYSIS**

In seeking judgment on the pleadings, the defendants assert that several of the plaintiff's claims cannot be sustained as a matter of law. Specifically, they maintain that the plaintiff's Title IX claims against the individual administrators cannot be sustained because Title IX applies only to entities that receive federal funding, not individuals. The defendants also contend that the plaintiff's equal protection claims based on race, color, or national origin cannot be sustained because they are identical to her Title VI claims and, therefore, must be litigated under Title VI as a matter of law.[2] Finally, the defendants maintain that the plaintiff's substantive due process

---

[2] The defendants state that they are challenging the plaintiff's equal protection claims based on race, color, or national origin. However, it is important to note that the plaintiff did not bring an equal protection claim based on color – her only equal

- 5 -

claims are insufficient as a matter of law because the due process clause only protects people from state action and school district administrators cannot be held liable for failing to protect students from each other. At this time, the defendants do not challenge the plaintiff's Title VI claims or her equal protection claims based on sex.

In response, the plaintiff concedes that her Title IX claims lie only against the School District and not against the individual defendants. Therefore, to the extent that the first amended complaint could be read to assert a Title IX claim against any individual defendant, such claim will apply only to the School District and not to either of the individual defendants. With respect to the defendant's other contentions, the plaintiff asserts that she may proceed simultaneously under Title VI and the equal protection clause of the Fourteenth Amendment and that her substantive due process claims are sufficient.

Section 1983 of Title 42 of the United States Code "creates a civil remedy for violations of federal rights (including constitutional rights) under color of state law . . .." Williams v. Wendler, 530 F.3d 584, 586 (7th Cir. 2008). It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, provides that:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

---

protection claims are based on race, national origin, and sex. The defendants do not challenge the equal protection claim based on sex at this time. Therefore, the only equal protection claims at issue are based on race and national origin.

In seeking to dismiss the plaintiff's § 1983 claims, the defendants rely on case law from the court of appeals for this circuit which directly addresses whether Title VI precludes claims under § 1983. However, in opposing the motion to dismiss, the plaintiffs maintain that more recent case law from the United States Supreme Court holds that she may pursue her § 1983 claims simultaneously with her Title VI claims.

The Supreme Court has not directly addressed whether Title VI precludes simultaneous claims under § 1983, but it has addressed whether other statutory schemes, such as Title IX, preclude claims under § 1983. See Fitzgerald v. Barnstable School Committee, 555 U.S. 246,129 S.Ct. 788 (2009). In Fitzgerald, the Court found that "[i]f Congress intended a statute's remedial scheme to 'be the exclusive avenue through which a plaintiff may assert [the] claim, the § 1983 claims are precluded.'" Fitzgerald, 555 U.S. at __, 129 S.Ct. at 794 (internal citations omitted). When determining whether a specific statutory scheme precludes § 1983 claims, a court should place "primary emphasis on the nature and extent of that statute's remedial scheme." Id. (citing Middlesex County Sewerage Authority v. National Sea Clammers Assn., 453 U.S.1, 20 [1981]).

In Fitzgerald, the plaintiffs sued their daughter's school district, claiming that the school district's response to the peer-on-peer sexual harassment suffered by their daughter was inadequate and resulted in additional harassment to their daughter. The complaint included (1) a Title IX claim, and (2) 42 U.S.C. § 1983 claims for violations of Title IX and the equal protection clause of the Fourteenth Amendment. The Court found that the statutory scheme set forth in Title IX does not preclude simultaneous claims under § 1983 for a number of reasons. Title IX's remedial scheme is not as "'unusually elaborate,' 'carefully tailored,' and 'restrictive'" as other statutory schemes. Id. at 795 (citations omitted). The Court emphasized that Title IX has no administrative exhaustion requirement, no notice provisions, and allows plaintiffs to file

- 7 -

suit directly in court and to obtain the full range of remedies. The Court stated that "'the existence of a more restrictive private remedy for statutory violations has been the dividing line between those cases in which we have held that an action would lie under § 1983 and those in which we have held that it would not.'" Id. at 796 (quoting Rancho Palos Verdes v. Abrams, 544 U.S. 113, 121 [2005]). Because Title IX did not include a private, more restrictive remedy, the Court found that it did not preclude suit under § 1983.

In addition to Title IX's remedial scheme, the Court analyzed the protections offered by Title IX and the equal protection clause. The Court found that the two do not provide identical protections and that the claims may be asserted against different parties, as Title IX does not authorize suit against individuals but § 1983 does. In addition, the Court found that Title IX and § 1983 have different standards for establishing liability. Therefore, the Court found that "[i]n light of the divergent coverage of Title IX and the Equal Protection Clause, as well as the absence of a comprehensive remedial scheme . . ., we conclude that Title IX was not meant to be an exclusive" remedy and the plaintiffs were permitted to pursue both claims simultaneously. Id. at 797.

In asserting that the plaintiff's equal protection claims must be pursued only under Title VI, the defendants rely on a decision from the court of appeals for this circuit which specifically addresses Title VI but which pre-dates the United States Supreme Court's decision in Fitzgerald. See Williams, 530 F.3d 584. In Williams, the plaintiffs sued a university, asserting that their suspensions violated the equal protection clause and Title VI. The court found that "[t]he Title VI and equal protection claims are identical," and stated that "[w]hen congress enacts a comprehensive scheme for enforcing a statutory right that is identical to a right enforceable under 42 U.S.C. § 1983 . . . the section 1983 lawsuit must be litigated in accordance with the scheme." Id. at 586.

The defendants contend that the holdings in Fitzgerald and Williams do not conflict because the holding in Fitzgerald addresses Title IX, while the holding in Williams addresses Title VI. Therefore, according to the defendants, this court is bound by the finding in Williams that Title VI precludes a simultaneous § 1983 claim. However, the court did not come to an ultimate conclusion on the issue of preclusion, but rather stated that it was "no matter; for in any event the evidence of racial discrimination is insufficient to create an issue for trial." Id.

Moreover, the Court in Fitzgerald explained that Title IX was modeled after Title VI, stating that,

> Congress modeled Title IX after Title VI of the Civil Rights Act of 1964 and passed Title IX with the explicit understanding that it would be interpreted as Title VI was. At the time of Title IX's enactment in 1972, Title VI was routinely interpreted to allow for parallel and concurrent 1983 claims, and we presume Congress was aware of this when it passed Title IX.

Fitzgerald, 129 S.Ct. 797 (internal citations omitted).

In fact, the court of appeals for this circuit also has found that Title IX and Title VI parallel each other and are interpreted the same. See Doe v. Smith, 470 F.3d 331, 338 (7th Cir. 2006). In Doe, the court specifically addressed whether the plaintiffs could proceed with § 1983 claims or whether those claims were barred by the plaintiffs' Title IX and Title VI claims. The court found that

> Title IX was modeled after Title VI of the Civil Rights Act of 1964 (under which the [plaintiffs] assert discrimination claims as well). The statutes are parallel except that Title VI prohibits race discrimination, not sex discrimination, and applies to all programs receiving federal funds, not only education programs. Because the two statutes largely operate in the same manner, both conditioning an offer of federal funding on a promise by the recipient not to discriminate, our discussion of the [plaintiffs'] Title IX claim applies to their Title VI claims as well.

Doe, 470 F.3d at 338 (internal citations omitted). The court then found that Title IX precluded the plaintiffs' § 1983 claims against the school officials and held that this finding applied equally to Title VI.

It is important to note that both the Supreme Court in Fitzgerald and the court of appeals for this circuit in Doe recognized that Title IX and Title VI are so similar that a decision with respect to one statute applies to the other statute. Other courts also have found that a decision with respect to Title IX applies to Title VI. See Cannon v. University of Chicago, 441 U.S. 677, 703 (1979) ("We have no doubt that Congress intended to create Title IX remedies comparable to those available under Title VI . . . ."); Bryant v. Indep. Sch. Dist. No. I-38 of Garvin County, 334 F.3d 928, 934 (10th Cir. 2003) ("because Congress based Title IX on Title VI . . . the Court's analysis of what constitutes intentional sexual discrimination under Title IX directly informs our analysis of what constitutes intentional racial discrimination under Title VI [and vice versa]."); Johnson v. City of Saline, 151 F.3d 564, 573 (6th Cir. 1998) ("Given that Title IX parallels Title VI very closely, the reasoning of [a case allowing compensatory damages under Title IX] extends to Title VI . . ..").

The remedial schemes set forth in Title IX and Title VI are nearly identical. See 42 U.S.C. § 2000d-2 and 20 U.S.C. § 1683. In addition, precedent establishes that the same analysis applies to each statute. Therefore, based on the holding in Fitzgerald, this court finds that Title VI does not preclude simultaneous claims under the equal protection clause. Accordingly, the defendant's motion for judgment on the pleadings on the equal protection claims will be denied.

With respect to the defendants' contentions that they should be granted judgment on the substantive due process claims, it is well established that "[g]enerally, state actors do not have a due process obligation to protect citizens from private harm." T.E. v. Grindle, 599 F.3d 583, 589 (7th Cir. 2010) (citing DeShaney v. Winnebago Cty. Dept. of Social Servs., 489 U.S. 189 [1989]). An exception to this rule exists when the state has a special relationship with the citizen, such as when the state has taken the citizen into custody or has otherwise limited the citizen's freedom to act on his or her own behalf. Id. However, in Grindle, the court found that

no special relationship exists between the state and students. See Grindle, 599 F.3d at 590. Therefore, the state does not owe an affirmative duty to students. Id.

Nonetheless, the court in Grindle found that a school principal may be held liable for "turning a blind eye to and affirmatively covering up evidence of child sexual abuse by one of her teachers." Id. In Grindle, the principal became aware that the band teacher was inappropriately touching several female students. In numerous meetings with the students' parents and other school district personnel, the principal affirmatively misrepresented the students' complaints as a mere "'pedagogical issue' rather than potential sexual harassment." Id. at 587.

The principal moved for summary judgment on the plaintiffs' substantive due process claim, asserting that she had no affirmative duty to protect the students. The court found that the principal could be held liable for affirmatively covering up the evidence of abuse, emphasizing that the "plaintiffs are not relying on a theory that 'mere failure of supervisory officials to act' violates the Due Process Clause." Id. at 590 (citing Stoneking v. Bradford Area School District, 882 F.2d 720, 730 [3d Cir. 1989]). Instead, the plaintiffs were seeking to hold the principal liable for her own misconduct, specifically, "actively concealing reports of abuse and creating an atmosphere that allowed abuse to flourish." Id. "When a state actor's deliberate indifference deprives someone of his or her protected liberty interest in bodily integrity," the court found that the state actor could be held liable for the resulting harm. Id.

An earlier case, Nabozny v. Podlesny, 92 F.3d 446 (7th Cir. 1996), also addressed whether a school district and school officials may be held liable for student-on-student harassment. In Nabozny, the plaintiff was "continually harassed and physically abused by fellow students because he is homosexual." Id. at 449. School administrators were aware of this, but did not enforce school policies of punishing student-on-student harassment. The administrators

even mocked the plaintiff themselves. The plaintiff filed suit against the school district and several school officials, alleging among other things that the defendants had violated his Fourteenth Amendment right to due process by exacerbating the risk that he would be harmed and encouraging an environment in which he would be harmed.

The court stated that it "agree[d] with [the plaintiff] in principle that the defendants could be liable under a due process theory if [the plaintiff] could show that the defendants created a risk of harm, or exacerbated an existing one." Id. at 460. However, the court found that the plaintiff had shown only that the defendants had failed to act. Even where such failure to act was intentional, as it was in Nabozny, the court found that the "defendants had no affirmative duty to act" and that "nothing suggests that their failure to act placed [the plaintiff] in the danger or increased the pre-existing threat of harm." Id. The court also found that the plaintiff's second basis for substantive due process liability – that the defendants had created an environment in which the plaintiff would be harmed – "rests on a failure to act" and therefore was untenable. Id.

In arguing against judgment on the pleadings, the plaintiff asserts that this case is more similar to Grindle than to Nabozny. The plaintiff contends that the defendants were "deliberately indifferent" to her constitutional right to bodily integrity and "affirmatively facilitated the abuse of that right" by the student abusers. (Amended Complaint at 19). Specifically, the plaintiff maintains that the defendants refused to transfer the plaintiff to a different school within the district, refused to call the police and report instances of abuse and instead relied on an internal investigation that was a sham, and did not remove one of the abusers, T.Q., from the plaintiff's classes for the next school year.

Despite the plaintiff's assertions that the defendants took affirmative actions, all of her substantive due process claims rest on the defendants' failures to act, a "fatal flaw" for a

- 12 -

substantive due process claim when there is no duty to act. Nabozny, 92 F.3d at 460. The facts set forth in the first amended complaint are very similar to those set forth in Nabozny, which arguably involved more affirmative action by the school administrators because they too engaged in the harassment by mocking the plaintiff. However, the school administrators in Nabozny were still found not to have encouraged a climate of harm.

The only other case relied on by the plaintiff, Grindle, is distinguishable from the facts of this case. As the court emphasized in Grindle , the claims were not based on a "'mere failure of supervisory officials to act.'" Grindle, 599 F.3d at 590 (citations omitted). Rather, the claims were based on the principle's own misconduct – actively concealing the plaintiffs' reports of abuse and turning a blind eye to their pleas for help.

After a careful review of the facts and relevant law, court concludes that the plaintiff has failed to state a claim under the due process clause. Therefore, the defendants' motion for judgment on the pleadings on this claim will be granted.

In summary, the defendants' motion for judgment on the pleadings will be granted in part and denied in part. The plaintiff may proceed on her Title IX claims only against the defendant School District and not against the individual defendants. The plaintiff may pursue both her equal protection and Title VI claims simultaneously. Finally, the plaintiff has failed to establish a claim under the due process clause.

## **MOTION TO COMPEL**

The plaintiff seeks to compel production of all relevant, confidential student records. Discovery in federal civil actions is governed by the Federal Rules of Civil Procedure. "The standard for discovery under those rules is very broad." Memorial Hosp. for McHenry Cty. v. Shadur, 664 F.2d 1058, 1061 (7th Cir. 1981). Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved

in the pending action." Rule 501 of the Federal Rules of Evidence governs how to determine whether material sought in discovery is privileged, reading:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of common law as they may be interpreted by the courts of the United States in light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Provisions of both Wisconsin state law and federal law provide certain protections for student records. Section 118.125 of the Wisconsin Statutes provides in relevant part that:

> All pupil records maintained by a public school shall be confidential except as provided [otherwise by statute]. The school board shall adopt policies to maintain the confidentiality of such records and may adopt policies to promote the disclosure of pupil records and information permitted by law for purposes of school safety.

Wis. Stat. § 118.125(2). The statute also states that records "shall be provided to a court in response to a subpeona by parties to an action for in camera inspection, to be used only for purposes of impeachment" of a witness who has testified in the action. Wis. Stat. §118.125(2)(f). In such cases, the court may turn over the records to the parties or their attorneys "if said records would be relevant and material to a witness's credibility or competency." Id.

The Family Educational Rights and Privacy Act of 1974 (FERPA), 20 U.S.C. § 1232g, similarly protects the confidentiality of student records, but allows such records to be disclosed pursuant to a court order. It provides that:

> (2) No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of releasing, or providing access to, any personally identifiable information in education records other than directory information or as provided [elsewhere in the statute], unless –

- 14 -

> . . . .
> (B) except as provided in paragraph (1)(J), such information is furnished in compliance with judicial order, or pursuant to any lawfully issued subpeona, upon condition that parents and the students are notified of all such orders or subpoenas in advance of the compliance therewith by the educational institution or agency.

20 U.S.C. § 1232g(b)(2)(B). FERPA "does not provide a privilege that prevents the disclosure of student records. 'Rather, by threatening financial sanctions, it seeks to deter schools from adopting policies of releasing student records.'" Ragusa v. Malverne Union Free School District, 549 F.Supp.2d 288, 291 (E.D.N.Y. 2008) (quoting Rios v. Read, 73 F.R.D. 589, 597 [E.D.N.Y. 1977]). Before disclosure of FERPA-protected documents pursuant a court order, the party seeking disclosure "is required to demonstrate a genuine need for the information that outweighs the privacy interests of the students." Ragusa, 549 F.Supp.2d at 292 (citations omitted).

In opposing the motion to compel, the defendants assert that Wis. Stat. § 118.125 applies to this case, and that it allows for disclosure of student records only for purposes of impeachment. In Shadur, the court addressed how to reconcile discovery disputes in federal court when state law prohibits disclosure of documents that federal law permits to be disclosed. See Shadur, 664 F.2d 1058. In that case, the plaintiff asserted that a group of competing physicians had improperly used disciplinary proceedings to restrain trade and exclude the plaintiff from competing with them. The plaintiff sought production of disciplinary proceeding records, but state law provided a privilege to such records and classified disclosure as a misdemeanor. The court found that the claim was brought under a federal law. As such, pursuant to Federal Rule of Evidence 501, "[b]ecause state law does not supply the rule of decision as to this claim, the district court was not required to apply state law in determining whether the material sought . . . is privileged." Id. at 1061.

The court weighed the interests at stake and found that the plaintiff's need for the information outweighed the state's interest in maintaining the privilege, stating that "[t]o deny [the plaintiff] access to this information may very well prevent him from bringing his action altogether." Id. at 1063. With respect to the defendant's claim that issues of comity and federalism required the court to recognize the state law, the court "view[ed] this dilemma as wholly illusory when considered in light of the Supremacy Clause of the United States Constitution." Id.

This case is similar to the Shadur case. As this action consists solely of federal claims, this court finds that FERPA applies. While the court recognizes the importance of keeping student records confidential, the plaintiff's claims require her to establish what the defendants knew about the abuse she suffered, when they knew about it, what they did to stop it, and what they did to stop harassment of similarly situated students who were of a different race, national origin, and/or sex than the plaintiff. This information may be available only through student records. The defendants themselves might rely on information from student records. In response to the plaintiff's request for documents that the defendants may use to support their claims or defenses, the defendants stated that they "will produce documents from the records of the District pertaining to the allegations in the First Amended Complaint," but "will not produce any records or files of students not identified as parties to this action . . .." (See Declaration of Jeff Scott Olsen in Support of Plaintiff's Motion to Compel, Exh. A. at 1). While it is not entirely clear that the defendants intend to rely on the records of students not identified as parties to this action, the response could imply that they intend to rely on those records but will not produce them.

The plaintiff has stated that she is willing to agree to a protective order that would protect as much as possible the privacy of the students whose records are disclosed. The court finds

that the plaintiff has demonstrated a need for the student records which outweighs the defendants' interests in keeping the records confidential. Accordingly, the plaintiff's motion to compel will be granted. The parties are to draft a protective order that complies with the notice conditions set forth in FERPA, 20 U.S.C. § 1232g(b)(2)(B), and keeps confidential as much individually identifiable information as possible. The stipulated protective order should be provided to the court by no later than August 15, 2011.

## **ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's motion to compel be and hereby is **granted**. (Docket #57).

**IT IS ALSO ORDERED** that the parties shall agree to a protective order that complies with the notice conditions set forth in FERPA, 20 U.S.C. § 1232g(b)(2)(B), and keeps confidential as much individually identifiable information as possible. The stipulated protective order should be filed with the court by no later than **August 15, 2011.**

**IT IS FURTHER ORDERED** that the defendant's motion for judgment on the pleadings be and hereby is **granted in part and denied in part** as set forth herein. (Docket #59). The defendant's motion is **granted** with respect to the plaintiff's substantive due process claim. The defendant's motion is **denied** with respect to the plaintiff's equal protection claims based on race and national origin. The plaintiff's Title IX claims are asserted only against the School District of Elmbrook.

Dated at Milwaukee, Wisconsin this 14th day of July, 2011.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge